UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                           :
                                                                 :   Chapter 11
QUEEN ELIZABETH REALTY CORP.,                                    :
                                                                 :   Case No. 13-12335 (SMB)
                                          Debtor,                :
                                                                 :
----------------------------------------------------------------- x
                                                                 :
QUEEN ELIZABETH REALTY CORP.,,,                                  :
                                                                 :
                                                                 :
                                          Plaintiff,             :
                                                                 :
                    - against-                                   :   Adv. Proc. No. 13-01386
                                                                 :
DEAN K. FONG, ESQ., as Receiver of the Property of               :
Phillip Wu, PHILLIP WU (individually) and                        :
MARGARET WU (individually),                                      :
                                                                 :
                                          Defendants.            :
-----------------------------------------------------------------x


**DECLARATION OF DEAN K. FONG IN SUPPORT OF (i) MOTION TO DISMISS OR SUSPEND THE BANKRUPTCY CASE, OR IN THE ALTERNATIVE, FOR RELIEF UNDER SECTION 543(c) AND (d) OF THE BANKRUPTCY CODE FROM TURNOVER OF PROPERTY; AND (ii) MOTION TO DISMISS THE ADVERSARY PROCEEDING**

I, Dean K. Fong, Esq., as Receiver of the Property of Phillip Wu (the "Receiver"), submit this declaration in support of:

(i) my motion pursuant to sections 1112(b), 305(a), and 543(c) and (d) of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*) ("the Bankruptcy Code") for (i) an order dismissing this case ("the Case") under Bankruptcy Code §1112(b) based on lack of good faith and for cause shown; (ii) an order dismissing or suspending the proceedings in this Case under Bankruptcy Code §305(a), as the interests of the creditors and debtor would be better served by dismissal or suspension; or in the alternative, (iii) an order (a) excusing compliance with any turnover under Bankruptcy Code §543(d), and/or (b) protecting the property held in the receivership and for payment of my reasonable costs and expenses under Bankruptcy Code §543(c); and

(ii) my motion to dismiss the adversary proceeding captioned <u>Queen Elizabeth Realty Corp. v. Dean K. Fong, Esq., as Receiver of the Property of Phillip Wu et al.</u> (Adv. Proc. No. 13-01386) in its entirety with prejudice.

I declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, the following to be true and correct to the best of my knowledge:

**<u>Matrimonial Action and Appointment of Receiver</u>**

1. I was appointed the Receiver in a matrimonial action that was commenced in 2009 in the Supreme Court of the State of New York, New York County ("the State Court"), captioned *Margaret Wu v. Phillip Wu* (Index No. 300080/09) (the "Matrimonial Action").

2. The State Court in the Matrimonial Action entered an order dated May 11, 2010 appointing Margaret Wu and myself as co-receivers (the "May 11, 2010 Order"). Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the May 11, 2010 Order.

3. The May 11, 2010 Order, entered by the State Court in the Matrimonial Action, states, in pertinent part:

> WHEREAS the defendant [Phillip Wu] is the nominal and/or beneficial owner[] of several businesses, including … Queen Elizabeth Realty, ….
>
> WHEREAS a hearing was conducted before Special Referee Marilyn Sugarman on the issue of the extent of defendant's ownership interests in the remaining properties [including Queen Elizabeth Realty] and the need for appointment of a receiver to protect plaintiff's equitable distribution interests therein, and
>
> WHEREAS, the Special Referee, after a hearing on the issues, concluded and recommended that plaintiff be appointed co-receiver of all properties, along with the appointment of a person … to act as co-receiver with plaintiff; and
>
> WHEREAS the Report and Recommendations of the Special Referee dated April 5, 2010 was confirmed by this court by Order of May 10, 2010;

> **IT IS HEREBY ORDERED** that pursuant to CPLR §6401, plaintiff Margaret Wu, plaintiff herein, and Dean Fong, Esq., … are hereby appointed co-receivers of all of the assets and property of defendant as listed above, during the pendency of this action; and it is further
>
> **ORDERED** that … [the Receiver] and Margaret Wu … shall take possession of the businesses and property and shall take such steps as they in their discretion deem advisable consistent with their fiduciary duties, including the collection of all rents, income and revenues, and payment of mortgages, salaries, taxes and other obligations and liabilities attributable to the properties, to the end of preserving those assets for ultimate distribution to the parties in this action; and it is further ….
>
> **ORDERED** that defendant, his representatives, agents, servants, or employees and each of them are hereby enjoined and restrained from interfering in any manner with said Receivers; and it is further
>
> **ORDERED** that the co-receivers may incur at the expense of the parties, such costs and charges, and make such disbursements as may be actually necessary for executing the duties imposed by this order, including such legal and accountancy fees as are actually necessary, and that the receivers are authorized to institute and carry on all actually and necessary legal proceedings to accomplish the duties imposed herein; and it is further ….
>
> **ORDERED** that the co-receivers, or either of them, may at any time apply to this court for an order or instructions or powers necessary to enable them to properly fulfill their duties hereunder; and it is further
>
> **ORDERED** that the co-receivers shall continue to perform said duties until further order of this Court.

4. The May 11, 2010 Order was amended, by order dated May 24, 2010 (the "May 24, 2010 Order," and collectively with the May 11, 2010, the "Receivership Order"), to make me the sole Receiver in the Matrimonial Action. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the May 24, 2010 Order.

5. Pursuant to the Receivership Order, I made disbursements in the ordinary course of business from the property of Phillip Wu, including certain real property described more fully

below.  At all relevant times, Phillip Wu never objected to these disbursements, and in fact, the disbursements were often used to satisfy obligations of Phillip Wu to pay maintenance and support to Margaret Wu.

**Relationships Between QER, New Enterprise, Hong Kong Supermarket, and Jeffrey Wu**

6.      In connection with my appointment as Receiver, I learned that Queen Elizabeth Realty Corp. ("QER"), a single asset real estate entity that owns a commercial condominium unit located at 157 Hester Street, a/k/a 68-82 Elizabeth Street, New York, New York (the "Real Property"), had master leased the Real Property to New Enterprise Realty, LLC ("New Enterprise").

7.      QER's chapter 11 petition was signed by its purported President, Jeffrey Wu.

8.      I also learned that New Enterprise, in turn, subleased that space to (among others) Hong Kong Supermarket Inc. and/or Hong Kong Supermarket of Hester Street Corp. d/b/a/ "Hong Kong Supermarket" (collectively, "Hong Kong Supermarket"), and Salon de Tops, Inc. ("Salon").

9.      Attached hereto as Exhibit 3 are certain mortgage and loan documents obtained from Shanghai Commercial Bank Ltd. in response to the Receiver's subpoena concerning QER and New Enterprise (collectively, the "Loan Documents").  As reflected in the Loan Documents, Myint J. Kyaw, a/k/a Jeffrey Wu, was the Managing Member of New Enterprise.

10.     Attached hereto as Exhibit 4 is an Emergency Order To Show Cause for a Stay ("Emergency Stay Order") that was filed in the Matrimonial Action by Jeffrey Wu (as explained in more detail below).  The Emergency Stay Order reflects that Myint J. Kyaw, a/k/a Jeffrey Wu, was the principal owner of Hong Kong Supermarket as of June 2013.

11. To the best of my knowledge, the law firm of Hugh H. Mo P.C. (the "Hugh Mo Firm") represented all of Myint J. Kyaw, a/k/a Jeffrey Wu, and New Enterprise and Hong Kong Supermarket, the two entities he controlled, throughout the Matrimonial Action and the proceedings described below. In addition, as explained below, the Hugh Mo Firm stated that it represented QER in proceedings involving the receivership.

**Litigation Involving QER and Entities Controlled by Jeffrey Wu**

12. In or about August 2010, through my counsel, I transmitted letters to Hong Kong Supermarket and Salon requesting that they attorn the Real Property pursuant to the Receivership Order.

13. Subsequently, Salon made payments to me, through its counsel, but Hong Kong Supermarkets made no payments until 2012.

14. On or about September 3, 2010, New Enterprise commenced a summary eviction proceeding against Salon (the "New Enterprise Action") for non-payment of rent. Salon moved to interplead the Receiver.

15. New Enterprise, by its counsel, the Hugh Mo Firm, engaged in substantial motion practice involving the receivership in the New Enterprise Action.

16. On February 14, 2011, the Hugh Mo Firm executed, on behalf of New Enterprise, a stipulation in the Matrimonial Action that permitted myself, as Receiver, to be added as an interpleader-respondent in the New Enterprise Action (the "February 14, 2011 Stipulation"). Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the February 14, 2011 Stipulation.

17. The February 14, 2011 Stipulation included the following Whereas clause:

> WHEREAS, the Receiver believes it is consistent with the Order of Appointment and his responsibilities thereunder to collect all rents,

> income and revenues and to preserve those assets for ultimate distribution to the parties to participate as a Respondent in the [New Enterprise Action].

(Exh. 5 at p. 2.)

18. I then answered and filed counterclaims against New Enterprise for non-payment of rents under the lease between QER and New Enterprise. Attached hereto as <u>Exhibit 6</u> is a true and correct copy of my Answer to Interpleader Petition with Counterclaim (the "Receiver's Counterclaim") and New Enterprise's Reply thereto.

19. As set forth in the Receiver's Counterclaim, New Enterprise had not been paying any rent to the receivership for nine months.

20. The parties to the New Enterprise Action ultimately settled in July 2011. Attached hereto as <u>Exhibit 7</u> is a true and correct copy of the Stipulation of Settlement, which was so-ordered on July 14, 2011, in the New Enterprise Action (the "July 14, 2011 Stipulation").

21. Pursuant to the July 14, 2011 Stipulation, the parties acknowledged my role, as Receiver, in collecting rents on behalf of the Debtor, and permitted me to continue collecting such rents. Specifically, the July 14, 2011 Stipulation provided (among other things) that (i) Salon would continue making its rent payments to the Receiver; (ii) New Enterprise agreed to pay to the Receiver the ongoing rents it owed to QER and to pay to the Receiver previous rents owed (subject to certain credits, including real estate taxes and the rent Salon was paying directly to the Receiver); and (iii) New Enterprise consented to entry of a final judgment of possession against it and the immediate issuance of a warrant of eviction in the event that New Enterprise failed to make the requisite payments (the "Judgment Against New Enterprise").

22. Thereafter, Salon continued making payments to the receivership, and New Enterprise made certain payments to the receivership as well.

6

23. However, shortly after the July 14, 2011 Stipulation was entered, the parties disagreed over (among other things) the amount of credit that I should give to New Enterprise on its rental payments.

24. On August 3, 2011, through my counsel, I transmitted a letter to the Hugh Mo Firm (the "August 3, 2011 Letter"), noting receipt of New Enterprise's payment and discussing future amounts owed. Attached hereto as <u>Exhibit 8</u> is a true and correct copy of the August 3, 2011 Letter.

25. By letter dated September 1, 2011 (the "September 1, 2011 Letter"), the Hugh Mo Firm disputed my position with respect to the amounts owed. Attached hereto as <u>Exhibit 9</u> is a true and correct copy of the September 1, 2011 Letter.

26. In the September 1, 2011 Letter, the Hugh Mo Firm, speaking on behalf of New Enterprise, acknowledged (among other things) that (i) New Enterprise was obligated to make certain payments (subject to certain credits) to the receivership (although the amount was in dispute), and (ii) "… the Receiver is now responsible for maintaining QER as a supposed asset of the marital estate in the matter of Wu v. Wu." (Exh. 9 at pp. 1-2.)

27. After several months of non-payment by New Enterprise, I executed the Judgment Against New Enterprise and gave notice to all parties of the legal eviction of New Enterprise.

28. On March 1, 2012, the marshal evicted New Enterprise and took legal possession of the Real Property. Attached hereto as <u>Exhibit 10</u> is a true and correct copy of the Marshal's Legal Possession (with attachments).

29. Hong Kong Supermarket continued to occupy the Real Property and an eviction of Hong Kong Supermarket was not immediately pursued. Rather, I sought to negotiate with Hong Kong Supermarket, through its counsel – also the Hugh Mo Firm – for a monthly rental at

a fair market rate and for payments of the past due rents Hong Kong Supermarket owed for occupying the Real Property. However, no agreement was reached.

30. On May 2, 2012, Jeffrey Wu and Lewis Wu, purportedly acting on behalf of QER, filed a motion in the Matrimonial Action ("Intervention Motion"), seeking (among other things) to intervene, to vacate the Receivership Order, and to recover sums collected through the receivership. Attached hereto at <u>Exhibit 11</u> is a true and correct copy of the Intervention Motion.

31. The Intervention Motion was held in abeyance by the State Court at the movant's request, pending settlement discussions. However, in open court on June 6, 2012, counsel for the movant agreed to make interim payments for use and occupancy in the amount of $40,000 per month, allowing credit for certain real estate taxes and mortgage expenses (the "June 6, 2012 Open Court Stipulation"). Attached hereto as <u>Exhibit 12</u> is a true and correct copy of the transcript of the June 6, 2012 hearing in the Matrimonial Action. The stipulation is set forth on pages 6 and 7 therein.

32. Unfortunately, I never received any payments pursuant to the June 6, 2012 Open Court Stipulation.

33. On July 24, 2012, I commenced a landlord-tenant holdover action against Hong Kong Supermarket (the "HKS Holdover Action").

34. For several months thereafter, the parties agreed to adjourn the trial dates of the HKS Holdover Action, as well as the Matrimonial Action, while they sought to negotiate a global resolution. Attached hereto as <u>Exhibit 13</u> is a true and correct copy of the Stipulations of Adjournment in the HKS Holdover Action, dated September 21, 2012 and November 8, 2012.

35. As a condition of these adjournments, Hong Kong Supermarket was required to pay $25,000 per month to the receivership. Hong Kong Supermarket made those payments through May 2012.

36. At a conference in the Matrimonial Action in May 2013, the State Court was reluctant to provide further adjournments to the parties because the matter had been pending for so long. Consequently, through my counsel, I informed the Hugh Mo Firm that I could no longer agree to continue adjourning the HKS Holdover Action.

37. On May 14, 2013, the State Court in the Matrimonial Action also directed the Receiver to pay $5,000 in maintenance and $50,000 in child support arrears to Margaret Wu pursuant to a so ordered Stipulation between the parties (the "May 14, 2013 Order"). This followed a separate order, dated May 2, 2012, which directed the Receiver to disburse $500,000 to Margaret Wu for child support arrears and maintenance (the "May 2, 2012 Order"). Attached hereto as Exhibit 14 are true and correct copies of the May 2, 2012 Order and the May 14, 2013 Order.

38. On June 4, 2013, Jeffrey Wu, as principal owner of Hong Kong Supermarket, filed papers in the Matrimonial Action, seeking an emergency stay of the HKS Holdover Action. The Court in the Matrimonial Action denied the stay, as reflected in the Emergency Stay Order. (*See* Exh. 4 at p. 2.)

39. The trial in the HKS Holdover Action went forward, and I obtained a judgment, dated June 13, 2013 (the "Judgment Against HKS"), in the sum of $3,256,000 against Hong Kong Supermarket. A warrant of eviction (the "Warrant of Eviction") was issued fifteen days later on June 28, 2013. Attached hereto as Exhibit 15 is a true and correct copy of the Judgment Against HKS and the Warrant of Eviction.

40. On July 10, 2013, Jeffrey Wu (through a new attorney, Mark Lubelsky, Esq.), sought another *ex parte* stay in the Matrimonial Action, to enjoin efforts to evict Hong Kong Supermarket. The interim stay was denied. Attached hereto as <u>Exhibit 16</u> is a true and correct copy of the Denial of the Emergency Order to Show Cause for TRO.

41. On July 11, 2013, Margaret Wu moved the State Court, by order to show cause, for an order holding Phillip Wu in contempt for his failure to attend a deposition as ordered by the court, directing an inquest on the equitable distribution of marital property, and directing an immediate sale of the remaining marital property, including QER, and imposing other sanctions (the "Sale Motion"). Attached hereto as <u>Exhibit 17</u> is a true and correct copy of the Sale Motion (including the accompanying affirmation, but not the exhibits).

**<u>Filing of Bankruptcy Cases and Other Motion Practice</u>**

42. On July 17, 2013, Hong Kong Supermarket filed both (i) a notice of appeal of the Judgment Against HKS in the HKS Holdover Proceeding, and (ii) a notice of removal of the HKS Holdover Proceeding (*see* 13-cv-04988). On or about September 6, 2013, the action was transferred from the District Court to this Court (*see* 13-ap-1496). Attached hereto as <u>Exhibit 18</u> is a true and correct copy of the Notice of Appeal of the Judgment Against HKS in the HKS Holdover Proceeding. Attached hereto as <u>Exhibit 19</u> is the Notice of Removal of the HKS Holdover Proceeding.

43. On the same day, QER filed for bankruptcy, commencing this case.

44. Just a few weeks later, on August 1, 2013, QER separately removed the Matrimonial Action to the United States District Court forth Southern District of New York (*see* 13-cv-05394). On or about September 6, 2013, the action was transferred from the District Court

to this Court (*see* 13-ap-1495). Attached hereto as Exhibit 20 is the Notice of Removal of the Matrimonial Action.

45. On August 5, 2013, Phillip Wu filed for bankruptcy under Chapter 13 in the Eastern District of Pennsylvania Bankruptcy Court. Attached hereto as Exhibit 21 is a true and correct copy of Phillip Wu's bankruptcy petition.

46. Throughout this Case, the related adversary proceedings, and the proceedings in the Eastern District of Pennsylvania Bankruptcy Court, the Debtor and its principals seek to re-litigate issues decided in the State Court and to circumvent various State Court judgments and orders. Such actions demonstrate Debtor's bad faith intent in bringing these bankruptcy proceedings.

Executed on September 18, 2013

_____
Dean K. Fong, Esq.