**Presentment Date and Time: October 20, 2015 at 12:00 p.m.**
**Objection Deadline: October 20, 2015 at 11:30 a.m.**

HERRICK, FEINSTEIN LLP
Robert L. Rattet
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
rrattet@herrick.com
*Counsel for Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                          Chapter 11

QUEEN ELIZABETH REALTY CORP.,      Case No. 13-12335 (SMB)

         Debtor.
-------------------------------------------------------x

### NOTICE OF PRESENTMENT OF STIPULATION AND AGREED ORDER REGARDING AMENDMENT TO FORBEARANCE AGREEMENT WITH SCB

      **PLEASE TAKE NOTICE** that the undersigned will present the attached *Stipulation and Agreed Order Regarding Amendment to Forbearance Agreement with SCB* to the Honorable Judge Stuart M. Bernstein, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, at One Bowling Green, New York, New York, 10004, for signature on **October 20, 2015 at 12:00 p.m.** (prevailing Eastern Time).

      **PLEASE TAKE FURTHER NOTICE** that unless a written objection to the proposed *Stipulation and Agreed Order Regarding Amendment to Forbearance Agreement with SCB*, with proof of service, is filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers before the date of presentment, there will not be a hearing and the stipulation and agreed order may be signed.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will notify the moving and objecting parties of the date and time of the hearing and of the moving party's obligation to notify all other parties entitled to receive notice.    The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

Dated: New York, New York
        October 6, 2015

HERRICK, FEINSTEIN LLP
*Attorneys for the Debtor and Debtor in Possession*

By: */s/ Robert Rattet*
        Robert L. Rattet
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
rrattet@herrick.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

QUEEN ELIZABETH REALTY CORP.,                    Chapter 11
                                                 Case No. 13-12335 (SMB)
                                    Debtor.

-----------------------------------------------------------------X

## STIPULATION AND AGREED ORDER REGARDING
## AMENDMENT TO FORBEARANCE AGREEMENT WITH SCB

This Stipulation and Order (the "Stipulation and Order") is entered into between Shanghai Commercial Bank Ltd., New York Branch ("SCB") and Queen Elizabeth Realty Corp. (the "Debtor") (each a "Party," and collectively, the "Parties") regarding the First Amendment to Forbearance Agreement (the "Amendment") annexed hereto as Exhibit A.

## RECITALS

**WHEREAS**, on July 17, 2013 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code; and

**WHEREAS**, SCB is a mortgagee of the Debtor with respect to the real property located at 66/82 Elizabeth Street (a/k/a 80 Elizabeth Street), Commercial Unit, New York, New York 10013, Block: 239, Lot: 1001 (the "Property");

**WHEREAS**, on September 23, 2013, the Court approved and entered that certain Stipulation and Order Authorizing Debtor's Interim Use of Cash Collateral [Docket No. 30] (the "Cash Collateral Order"), pursuant to which SCB has a first priority lien in and to the Collateral (as that term is defined in the Cash Collateral Order), which has priority over any and all other liens, claims and encumbrances (except for real estate taxes against the Property);

**WHEREAS**, SCB holds a secured claim against the Debtor in an amount not less than $14,449,816.40 as of June 23, 2015 (the "SCB Secured Claim") under those loan documents entered into by the Debtor and SCB as described in the Cash Collateral Order (the "SCB Loan Documents");

**WHEREAS**, one of the loans in connection with the SCB Loan Documents was to mature on July 22, 2015, by the terms of the note evidencing such loan (the "Note");

**WHEREAS**, on July 22, 2015, the Debtor and SCB entered into that certain Forbearance Agreement, pursuant to which SCB agreed to forbear from enforcing its rights under the SCB Loan Documents through September 30, 2015;

**WHEREAS**, on or about July 7, 2015, the Debtor filed its Second Amended Chapter 11 Plan of Reorganization (the "Plan"), which provided, *inter alia*, that, in addition to other amounts to be paid to SCB under the Plan on the Effective Date (as that term is defined in the Plan), SCB would be paid an assignment fee of $100,000 in exchange for its agreement, *inter alia*, to assign certain loan documents to a third-party on the Effective Date;

**WHEREAS**, the Debtor has requested that SCB agree to amend the Forbearance Agreement so that the Forbearance Period (as defined in the Forbearance Agreement) is extended to the earlier of December 31, 2015, or the date of the occurrence of any one or more Termination Event (as defined in the Amendment);

**WHEREAS**, the Debtor has represented to SCB that it intends to file a proposed Third Amended Chapter 11 Plan of Reorganization (the "Amended Plan"), which will provide *inter alia*, that, in addition to other amounts to be paid to SCB under the Amended Plan on the Effective Date (as that term is to be defined in the Amended Plan), SCB will be paid an

assignment fee of $200,000 in exchange for its agreement, *inter alia*, to assign certain loan documents to a third-party on the Effective Date; and

**WHEREAS**, SCB has agreed to extend the Forbearance Period in accordance with the terms of the Amendment.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED** by and between the Parties that:

1.      The Debtor consents to lift the automatic stay solely for the limited purpose of entering into the Amendment.

2.      Except as provided herein and in the Amendment, all Parties' rights are reserved regarding their obligations arising out of the SCB Loan Documents.

**STIPULATED AND AGREED:**

HERRICK, FEINSTEIN LLP                    PRYOR CASHMAN LLP
*Counsel for the Debtor*                       *Counsel for SCB*


___*/s/ Hanh V. Huynh*_____        _____*/s/ Seth H. Lieberman*_____
By:  Hanh V. Huynh                              By:  Seth H. Lieberman

**IT IS SO ORDERED**

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## FIRST AMENDMENT TO FORBEARANCE AGREEMENT

THIS FIRST AMENDMENT FORBEARANCE AGREEMENT (this "**Agreement**") is made as of this 30th day of September, 2015 (the "**Execution Date**") between and among **SHANGHAI COMMERCIAL BANK LTD., NEW YORK BRANCH**, having an address of 125 East 56th Street, New York, New York 11560 (the "**Lender**"), on the one hand, and **MYINT J. KYAW a/k/a JEFFREY WU**, an individual residing at 60 Overlook Road, Locust Valley, New York 11560 ("**J.Wu**"), **NEW ENTERPRISE REALTY, LLC**, a New York limited liability company, having an address of c/o Jeffrey Wu, 60 Overlook Road, Locust Valley, New York 11560 ("**NER**" and together with J.Wu, collectively, the "**Borrowers**" and each a "**Borrower**"), on the other hand, and **QUEEN ELIZABETH REALTY CORP.**, a New York corporation, having an address of c/o Jeffrey Wu, 60 Overlook Road, Locust Valley, New York 11560 ("**QERC**"), **HONG KONG SUPERMARKET OF HESTER STREET CORP.**, New York corporation, having an address of c/o Jeffrey Wu, 60 Overlook Road, Locust Valley, New York 11560 ("**HKS**"), and **LEWIS WU**, an individual residing at 368 Crocus Hill, Norwood, New Jersey 07648 ("**L.Wu**" and together with QERC, HKS, collectively, the "**Guarantors**" and each a "**Guarantor**"), on the other hand. Each of the Borrowers and each of the Guarantors shall be collectivity referred to as the "**Obligors**" and each, an "**Obligor**". The Lender and each of the Obligors shall be collectively referred to as the "**Parties**" and each as a "**Party**".

## RECITALS

WHEREAS, on or about July 22, 2015, the Parties entered into that certain Forbearance Agreement dated July 22, 2015 (the "**Forbearance Agreement**");

WHEREAS, on or about July 7, 2015, QERC filed its Second Amended Chapter 11 Plan of Reorganization in the Bankruptcy Case (the "**Plan**");

WHEREAS, the Plan provided, *inter alia*, that, in addition to all other amounts to be paid to the Lender under the Plan on the Effective Date (as that term was defined in the Plan), the Lender would be paid an assignment fee of $100,000.00 in exchange for its agreement, *inter alia*, to assign certain loan documents to a third-party on the Effective Date;

WHEREAS, QERC has represented to the Lender that it intends to file a proposed Third Amended Chapter 11 Plan of Reorganization in the Bankruptcy Case (the "**Amended Plan**") and that the Amended Plan shall provide, *inter alia*, for the Lender to be paid an assignment fee in the amount of $200,000.00 in exchange for its agreement to, *inter alia*, assign certain loan documents to a third-party on the Effective Date (as that term is to be defined in the Amended Plan);

WHEREAS, the Obligors have requested that the Lender agree to amend the Forbearance Agreement so that the Forbearance Period is extended until the earlier of 5:00 P.M. New York City time, December 31, 2015, or the date of the occurrence of any one or more Termination Event, and the Lender has agreed to do so under the terms and conditions set forth in this Agreement; and

NOW, **THEREFORE**, in consideration of the mutual undertakings set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.      **Forbearance Agreement/Definitions**. Except only as expressly modified by this Agreement, the Parties agree and confirm that the Forbearance Agreement remains unmodified and in full force and effect and binding upon the Parties in accordance with its terms. All capitalized terms used in this Agreement which are not defined in this Amendment shall have the meanings ascribed thereto as set forth in the Forbearance Agreement.

2.      **Acknowledgements**. The Obligors hereby acknowledge, represent, warrant, ratify, admit, stipulate, and agree, without precondition or qualification for himself/itself, as of the Execution Date, as follows:

(a)     Each of the Recitals contained above in this Agreement is true, correct and complete in all material respects and are incorporated herein by reference;

(b)     **THE OBLIGORS (I) ENTERED INTO THE LOAN DOCUMENTS TO WHICH THEY ARE PARTIES AND (II) ARE ENTERING INTO THIS AGREEMENT, IN BOTH CASES, OF THEIR OWN FREE WILL, WITHOUT COERCION OR THREAT OF ANY KIND FROM THE LENDER OR FROM ANY OTHER PERSON, FULLY UNDERSTANDING THE TERMS HEREOF (INCLUDING THE WAIVER OF CERTAIN MATERIAL RIGHTS AFFORDED BY LAW), AND ARE FULLY AWARE THAT THEY MAY HAVE POTENTIALLY ADVANTAGEOUS ALTERNATIVES TO ENTERING INTO THIS AGREEMENT;**

(c)     The Lender and each of the Obligors shall derive material benefit by virtue of the execution and delivery of this Agreement and the performance of the Parties' obligations hereunder;

(d)     The Obligors', P.Wu's and RPC's respective obligations, covenants, and agreements under the Loan Documents (as applicable) are not diminished, waived or discharged by this Agreement, or by any action or inaction taken by the Lender in connection with this Agreement;

(e)     Each of the Loan Documents, without limitation, are in full force and effect and constitute valid and binding obligations of each of the Obligors (as applicable), P.Wu and RPC, enforceable against each of them (as applicable), in accordance with their respective terms;

(f)     Nothing herein shall be construed to be a waiver of any Event of Default or a waiver of any of the Lender's rights or remedies arising by reason of any Event of Default;

(g)     The Loan (i) was not and is not a debt incurred by the Borrowers for personal, family or household purposes and (ii) is not a "Home loan" as that term is defined in the New York Real Property Actions And Proceedings Law;

(h)     The Mortgage (i) is in full force and effect and is enforceable in accordance with its terms, and (ii) constitutes a valid and enforceable lien against the Property;

2

(i)     Each of the liens and security interests granted to the Lender pursuant to the terms of the other Loan Documents are all valid and enforceable by the Lender in accordance with the terms of the other Loan Documents;

(j)     Each of the Loan Documents, without limitation, are hereby ratified and confirmed;

(k)     The Existing Defaults remain uncured under the terms of the Loan Documents as of the Execution Date;

(l)     As of the Execution Date, the Obligations consisted of the principal amount of $1,798,845.04, accrued and unpaid interest in the amount of $412,838.90, accrued and unpaid late charges in the amount of $4,675.68 unpaid miscellaneous charges in the amount of $910.00, plus attorneys' fees, costs and expenses incurred in connection with the Existing Default and other defaults, plus all other amounts due or to become due under the terms of this Agreement and the other Loan Documents;

(m)     As a result of the Receivership Default, at all times since July 22, 2010, interest has been accruing on the Obligations at the current default rate of interest of ten percent (10.00%) and shall continue to accrue at the Default Rate until the Obligations are paid in their entirety;

(n)     The entire amount of the Obligations is immediately due and payable in full and continue to accrue and the Lender is entitled to collect immediately the entire amount of the Obligations from each of the Obligors, P.Wu and/or RPC;

(o)     Each of the Obligors, P.Wu and RPC are jointly and severally liable to pay to the Lender all of the Obligations, said liability being unconditional and without defense, counterclaim, recoupment or offset;

(p)     At all times since the occurrence of each of the Existing Defaults, and by reason thereof, the Lender has been unconditionally entitled (but not obligated) to enforce any or all of its rights and remedies under the terms of the Loan Documents, all in accordance with the terms of the Loan Documents (as applicable) and applicable law;

(q)     Any and all demands and/or notices required to be given by the Lender in connection with the Existing Defaults, if any, have in fact been given and received, all applicable grace periods (if any) have expired without cure having been effected, and/or the Obligors, P.Wu and RPC have waived any such notice provisions and grace periods;

(r)     The Obligors, P.Wu and RPC have no defense, right of set-off or recoupment, causes of action or claims or counterclaims against the Lender with respect to the Loan Documents and/or the Obligations (and/or have waived any such defenses, rights of set-off or recoupment, causes of action or claims or counterclaims);

(s)     The Obligors, P.Wu and RPC have no defenses, rights of set-off or recoupment, causes of action or claims or counterclaims against the Lender with respect to the liens and security interests granted to the Lender pursuant to the terms of the Loan Documents, and all of such liens and security interests are enforceable by the Lender (at its option); and

3

(t)     NER, QERC and HKS have the corporate power, and have been duly authorized by all requisite corporate action, to execute and deliver this Agreement and to perform their respective obligations hereunder.

3.     **Reaffirmation.** Each of the Obligors reaffirms that all of the Obligations shall survive the expiration of the Forbearance Period and that all Obligations are secured under the terms of the Loan Documents and any other documents, instruments, or agreements pursuant to which any of the Obligors may, from time to time, grant to the Lender as collateral security for any or all of the Obligations. Each of the Obligors reaffirms that all liens granted to the Lender pursuant to the terms of the Loan Documents remain in full force and effect as of the Execution Date. In addition, each of the Obligors (as applicable) reaffirms all covenants, representations and warranties set forth in the Loan Documents and agrees that all such covenants, representations and warranties shall be deemed to have been remade and are true and correct as of the Execution Date.

4.     **Conditions Precedent To Effectiveness.** The terms of this Agreement shall not be binding on the Lender unless and until (a) the Lender has executed and delivered this Agreement to the Obligors and the Obligors have executed and delivered this Agreement to the Lender; (b) the Borrowers have paid to the Lender and the Lender shall have collected the total of $[     – 0 –     ] to be applied to accrued and unpaid interest due to the Lender under the terms of the Loan; (c) the Borrowers have paid to the Lender and the Lender has collected the total of $3,500.00 in order to compensate it for a portion of the attorneys' fees, costs and expenses incurred in connection with the negotiation and preparation of this Agreement; (d) the Borrowers have paid to the Lender and the Lender shall have collected a $5,000.00 forbearance fee; (e) Borrowers have delivered to the Lender written evidence that all property taxes and related charges due to the City of New York in connection with the Property have been paid in full; and (f) NER, QERC and HKS have delivered to the Lender true and correct copies of their respective 2013 and 2014 federal tax returns (including all schedules thereto). The terms of this Agreement shall not be binding on QERC unless and until the Bankruptcy Court enters the Approval Order (as that term is defined below).

5.     **Bankruptcy Court Approval.** QERC's counsel in the Bankruptcy Case shall file a motion in the Bankruptcy Case to approve the Forbearance Agreement (as amended by this Agreement) within three (3) business days after the Execution Date (the "**Motion To Approve**"). Attached hereto as **Exhibit "A"** is a proposed order approving this Agreement (the "**Approval Order**") to be submitted to the Bankruptcy Court together with the Motion To Approve. This Agreement shall not be binding on QERC unless and until the Bankruptcy Court enters the Approval Order. If the Bankruptcy Court refuses to enter the Approval Order, the Lender may, in its sole discretion, declare this Agreement to be terminated and null and void. If the Lender declares this Agreement to be terminated in accordance with this Paragraph, none of the Parties shall have any obligations or liabilities to any other Party arising out of this Agreement. If and when this Agreement becomes binding on QERC in accordance with the terms of this Paragraph (if ever), this Agreement and each of its terms shall: (i) survive dismissal or conversion of the Bankruptcy Case and (ii) be incorporated by reference into any plan of reorganization or liquidation prepared in connection with the Bankruptcy Case.

6.     **Bankruptcy Proceedings/No Intent To Defraud Creditors.** Each of the Obligors (other than QERC) represents for itself that such Party has no present or current intent

4

to file any voluntary petition under Chapter 7, Chapter 11 or Chapter 13 of Title 11 of the United States Code and/or any federal or state statutes and/or regulations related thereto or in any instance to seek relief, protection, reorganization, liquidation, dissolution or similar relief for debtors under any local, state, federal or other insolvency law or laws providing for relief of debtors in equity. Each of the Obligors represents for himself/itself that neither the execution and delivery of this Agreement nor the performance of any actions required hereunder is being consummated with or as a result of any actual intent to delay, hinder or defraud any entity to which such Party is now or will hereafter become indebted.

7.   **Release; Lender's Liability**. Each of the Obligors, together with their respective current and former, partners, members, parents, affiliates, subsidiaries, partners, shareholders, officers, directors, employees, agents, attorneys, predecessors, successors, assigns and representatives of any kind, their respective successors and assigns (including, without limitation, any estate, debtor, trustee, receiver or assignee for the benefit of creditors) to the fullest extent permitted by law (collectively, the "**Releasing Parties**"), hereby release, remise, forever discharge and forgive the Lender and each of its direct and indirect, current and/or former, servicers, special servicers, collateral managers, trustees, partners, members, parents, affiliates, subsidiaries, shareholders, officers, directors, employees, agents, attorneys, predecessors, successors, assigns and representatives of any kind, and the predecessors, successors and assigns of all of the foregoing (collectively, the "**Released Parties**"), of and from any and all claims, causes, causes of action, demands, counterclaims, cross claims, damages, complaints, suits, bonds, losses, liabilities, obligations, commitments, contribution, indemnity or otherwise, at law or equity or mixed, known, unknown, suspected, unsuspected, asserted, unasserted, the Releasing Parties or any of them, now have, had or may in the future have against the Released Parties or any of them, which arose prior to the Execution Date. The Lender shall not be liable for any claims, suits, actions, costs, damages, liabilities or expenses, or incidental, consequential, special or punitive damages ("**Liabilities**") in connection with the subject matter of this Agreement and, in addition to any and all indemnification obligations set forth in the Loan Documents, each of the Obligors, jointly and severally, hereby agree to indemnify and hold harmless each of the Released Parties from and against any and all Liabilities arising from or in connection with any acts or omissions by the Lender and/or all of the Obligors in connection with this Agreement or the performance of any of their duties under this Agreement.

8.   **Amendment To Forbearance Agreement**. Subject to **Paragraphs 4** and **5** of this Agreement, the Forbearance Agreement shall be deemed amended, effective as of the Execution Date, to provide as follows:

(a)   The fifth and sixth sentences of Paragraph 7(a) of the Forbearance Agreement shall be deemed amended to provide as follows:

"The Lender's agreement to forbear from exercising any rights or remedies arising by reason of the Default shall commence as of the date on which all of the preconditions to forbearance set forth in the first sentence of Paragraph 3 of this Agreement have been satisfied in full (provided that said preconditions are satisfied within five (5) business days after the Execution Date) and shall continue until the earlier of 5:00 P.M. New York City time, December 31, 2015 or the date of the occurrence of any one or

5

more Termination Event (the "**Forbearance Period**"). Upon and after the earlier of the occurrence of a Termination Event or 5:00 P.M. New York City time, December 31, 2015 (each, a "**Termination Date**"), the Lender shall be free to exercise any right or remedy to which the Lender heretofore were, or hereafter shall, be entitled without regard to this Agreement."

(b)    Paragraph 7(b) of the Forbearance Agreement shall be deemed amended to provide as follows:

"During the Forbearance Period, the Borrowers shall pay to Lender monthly payments (collectively, the "**Forbearance Payments**" and each a "**Forbearance Payment**"), as follows: (i) $12,988.10 by no later than August 22, 2015; (ii) $12,988.10 by no later than September 22, 2015; (iii) $12,988.10 by no later than October 22, 2015; (iv) $12,988.10 by no later than November 22, 2015; and (v) $12,988.10 by no later than December 22, 2015. **TIME IS OF THE ESSENCE WITH RESPECT TO THE PAYMENT OF EACH OF THE FORBEARANCE PAYMENTS.**"

(c)    Paragraph 8(e) of the Forbearance Agreement shall be deemed amended to provide as follows:

"The commencement of any insolvency proceeding, the making of an assignment for the benefit of creditors, or the filing of a petition in bankruptcy, by or against any of the Obligors (other than QERC), P.Wu and/or RPC, other than an insolvency proceeding or petition in bankruptcy filed by the Lender, and/or, in connection with the Bankruptcy Case, the Bankruptcy Court fails to approve an amended plan of reorganization that provides, *inter alia*, for the Lender to receive a $200,000.00 assignment fee on the Effective Date (as that term is to be defined in said amended plan)."

9.    **Additional Representations And Warranties Of The Obligors.**  Each of the Obligors represents, warrants and covenants to the Lender for itself/himself, as of the Execution Date, as follows:

(a)    There are no actions, suits or proceedings pending or threatened against any of the Obligors (or any entity in which any of the Obligors has any interest) or any of their property before any court, administrative agency or other governmental authority, which brings into question the validity of this Agreement or the transactions contemplated hereby, and none of the Obligors has received actual or constructive notice or threat of the commencement of any such action against such Party;

(b)    Said Party has the full power, authority and legal right to execute, deliver and comply with this Agreement, and this Agreement constitutes the valid and legally binding obligation of such Party, enforceable against such Party in accordance with its terms;

6

(c)     Said Party (other than QERC) does not require any consent, approval or other authorization of any court, administrative agency or other governmental authority in connection with his/its execution and delivery of or compliance with this Agreement;

(d)     Said Party's execution and delivery of and compliance with this Agreement will not conflict with or result in a breach of any applicable law, judgment, order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority, or of any provision of any agreement or other document or instrument to which such Party is a party or by which such Party is bound, and such action will not result in the creation or imposition of any lien, charge or encumbrance upon any property of such party in favor of anyone other than the Lender; and

(e)     Said Party is current and not in default of its obligations to any and all governmental taxing authorities, including, without limitation, local, regional, and federal authorities.

10.     **Notices**. Notwithstanding anything to the contrary under the terms of any of the Loan Documents, any notice or other communication required or permitted to be given under the terms of this Agreement shall be in writing addressed to the respective party as set forth below and may be personally served or sent by overnight courier or U.S. Mail and shall be deemed given: (a) if served in person, when served; (b) if by overnight courier, on the first business day after delivery to the courier; or (c) if by U.S. Mail, certified or registered mail, return receipt requested on the fourth (4th) day after deposit in the mail postage prepaid:

| | |
|---|---|
| If to the Lender: | Shanghai Commercial Bank Ltd., New York Branch<br>125 East 56th Street<br>New York, New York 11560<br>Attention: Mr. Timothy Chan, Senior Vice President and Manager |
| With a copy to: | Pryor Cashman LLP<br>7 Times Square, 40th Floor<br>New York, New York 10036<br>Attention: Michael H. Levison, Esq. |
| If to any of the Obligors: | Jeffrey Wu<br>157 Hester Street<br>New York, New York 10013 |
| With a copy to: | Herrick, Feinstein LLP<br>2 Park Avenue<br>New York, New York 10016<br>Attention: Robert L. Rattet |

11.     **GOVERNING LAW**. THIS AGREEMENT SHALL BE GOVERNED BY AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL

7

LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.

12. **CONSENT TO JURISDICTION.** THE OBLIGORS HEREBY CONSENT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF NEW YORK, STATE OF NEW YORK AND IRREVOCABLY AGREE THAT, SUBJECT TO THE LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LITIGATED IN SUCH COURTS. THE OBLIGORS EXPRESSLY SUBMIT AND CONSENT TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVE ANY DEFENSE OF FORUM NON CONVENIENS. THE OBLIGORS HEREBY WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON THE OBLIGORS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO THE OBLIGORS, AT THE ADDRESS SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN DELIVERED.

13. **WAIVER OF JURY TRIAL.** THE OBLIGORS WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS OR REMEDIES UNDER THIS AGREEMENT, OR ANY ACTION OR PROCEEDING IN ANY WAY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, OR MIXED, AND AGREE THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT A BEFORE A JURY.

14. **Attorneys' Fees**. Upon the occurrence of a Termination Event, the Obligors shall be jointly and severally liable to the Lender for all costs and expenses, including but not limited to reasonable attorneys' fees (i) arising out of and after said Termination Event, and/or (ii) incurred in connection with the collection of any and all amounts due to the Lender pursuant to the terms of any judgment entered in connection with this Agreement or otherwise.

15. **Severability**. The invalidity, illegality or unenforceability of any provision of this Agreement shall not affect or impair the validity, legality or enforceability of the remainder of this Agreement, and to this end, the provisions of this Agreement are declared to be severable.

16. **Entire Agreement.** This Agreement is a complete integrated document, sets forth all of the terms, conditions and agreements between the Parties hereto with respect to the subject matter hereof and supersedes any and all prior and contemporaneous terms, conditions and agreements between the Parties hereto with respect to the subject matter hereof. All exhibits attached hereto are incorporated herein and made a part hereof by this reference. There are no other agreements, promises, representations or warranties made or given in connection with any of the foregoing or concerning the subject matter hereof that are not contained herein.

17. **Further Assurances**. Each of the Obligors shall execute and deliver to the Lender any and all documents and instruments as may reasonably be required to implement the understandings and agreements herein contemplated.

18.    **Amendments and Waivers.** The delay by the Lender to exercise promptly any right or remedy, to declare any default or to take any other action permitted or required hereunder shall not be construed as a waiver, course of dealing, or estoppel by or against Lender. The provisions of this Agreement may be modified, waived or amended only by a written agreement entered into by the Parties hereto. No waiver, modification or amendment shall extend to or affect any obligation not expressly waived, modified or amended, or impair any right of the Lender related to such obligation.

19.    **Survival.** Any and all representations, warranties, covenants, promises and understandings of any kind or nature whatsoever contained herein shall survive the execution and delivery hereof until all of the Obligations are indefeasibly repaid in full in cash to the Lender.

20.    **Multiple Counterparts.** This Agreement may be signed in multiple counterparts, and when each Party has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.

21.    **Construction.** Words used in this Agreement that are either singular or plural shall be construed to include the other where appropriate. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text. The Parties agree that this Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Agreement have been negotiated by the Parties at arms' length, and that no Party shall be deemed the scrivener of this Agreement. The Parties agree and direct that the rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall neither apply nor be applied to this Agreement.

22.    **Binding Effect.** Subject to the terms of **Paragraphs 4** and **5** of this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective representatives, successors and assigns.

23    **P.Wu/RPC Not A Party.** Notwithstanding the fact that P.Wu and RPC are not parties to this Agreement, each of the Obligors agree that (i) each of the Obligors, P.Wu and RPC are, and shall remain, jointly and severally liable to the Lender for all of the Obligations; (ii) the certain Continuing Guaranty In Favor Of Shanghai Commercial Bank Ltd., New York Branch dated July 22, 2010 and executed by P.Wu in favor of the Lender is, and shall remain and in full force and effect, and constitutes a valid and binding obligation of P.Wu, enforceable against him in accordance with its terms; and (iii) the certain Continuing Guaranty In Favor Of Shanghai Commercial Bank Ltd., New York Branch dated July 22, 2010 and executed by RPC in favor of the Lender is, and shall remain and in full force and effect, and constitutes a valid and binding obligation of RPC, enforceable against it in accordance with its terms. For the avoidance of doubt, Obligors agree that they shall remain jointly and severally liable for all of the Obligations even if it is subsequently determined by a court of competent jurisdiction that P.Wu and/or RPC are not liable for any or all of the Obligations by reason of the fact that P.Wu and RPC were not parties to the Forbearance Agreement and are not parties to this Agreement.

9

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the Execution Date.

LENDER:                                  **SHANGHAI COMMERCIAL BANK LTD.,**
                                         **NEW YORK BRANCH**

                                         By: _____
                                             Name: Timothy Chan
                                             Title: Senior Vice President & Manager

                                         By: _____
                                             Name: Chiu Nam Wu
                                             Title: Vice President

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

**[Signature and Acknowledgment Pages Follow]**

BORROWERS:

_____
MYINT J. KYAW a/k/a JEFFREY WU

NEW ENTERPRISE REALTY, LLC

By: _____
    Name: Myint J. Kyaw
    Title: Member

GUARANTORS:

QUEEN ELIZABETH REALTY CORP.

By: _____
    Name: Myint J. Kyaw
    Title: President

HONG KONG SUPERMARKET OF
HESTER STREET CORP.

By: _____
    Name: Myint J. Kyaw
    Title: President

_____
LEWIS WU

11

**BORROWERS:**

                _____

                **MYINT J. KYAW a/k/a JEFFREY WU**

                **NEW ENTERPRISE REALTY, LLC**

                By:_____
                    Name: Myint J. Kyaw
                    Title: Member

**GUARANTORS:**

                **QUEEN ELIZABETH REALTY CORP.**

                By:_____
                    Name: Myint J. Kyaw
                    Title: President

                **HONG KONG SUPERMARKET OF
HESTER STREET CORP.**

                By:_____
                    Name: Myint J. Kyaw
                    Title: President

                _____
                **LEWIS WU**

STATE OF NEW YORK         )
                                ) ss

COUNTY OF NEW YORK      )

The foregoing instrument was executed before me, a Notary Public, in New York County, State of New York on this 3○ᵗʰ day of *September* , 2015, by **Timothy Chan**, personally known to me or who has produced _____ as Identification, and who, upon oath, acknowledged himself as the Senior Vice President & Manager of **SHANGHAI COMMERCIAL BANK LTD., NEW YORK BRANCH** and who executed the foregoing instrument pursuant to authority duly conferred upon him, and acknowledge said instrument to be his free act and deed and the free act and deed of **SHANGHAI COMMERCIAL BANK LTD., NEW YORK BRANCH.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

_____, Notary Public

Commission Expires:

SHIRLEY ZHANG
Notary Public, State of New York
No. 01ZH6123297
Qualified in Queens County
Commission Expires June 17, 2017

STATE OF NEW YORK         )
                                ) ss

COUNTY OF NEW YORK      )

The foregoing instrument was executed before me, a Notary Public, in New York County, State of New York on this 3○ᵗʰ day of *September* , 2015, by **Chiu Nam Wu**, personally known to me or who has produced _____ as Identification, and who, upon oath, acknowledged himself as the Vice President of **SHANGHAI COMMERCIAL BANK LTD., NEW YORK BRANCH** and who executed the foregoing instrument pursuant to authority duly conferred upon him, and acknowledge said instrument to be his free act and deed and the free act and deed of **SHANGHAI COMMERCIAL BANK LTD., NEW YORK BRANCH.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

_____, Notary Public

Commission Expires:

SHIRLEY ZHANG
Notary Public, State of New York
No. 01ZH6123297
Qualified in Queens County
Commission Expires June 17, 2017

12

STATE OF NEW YORK         )
                              ) ss

COUNTY OF _____ )

      The foregoing instrument was executed before me, a Notary Public, in _____
County, State of New York on this _____ day of _____, 2015, by **MYINT J. KYAW**
**a/k/a**      **JEFFREY**      **WU,**      who      has      produced
_____ as Identification, and who acknowledged
that he executed the same as his free act and deed.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

                              ROBERT L. RATTET
                              NOTARY PUBLIC, State of New York
                              No. 4972649           , Notary Public
                              Qualified in Westchester County
Commission Expires:          Commission Expires October 1, 2015

<br>

STATE OF NEW YORK         )
                              ) ss

COUNTY OF _____ )

      The foregoing instrument was executed before me, a Notary Public, in New York
County, State of New York on this _____ day of _____, 2015, by **Myint J. Kyaw,**
personally      known      to      me      or      who      has      produced
_____ as Identification, and who, upon oath,
acknowledged himself as the President of **NEW ENTERPRISE REALTY, LLC** and who
executed the foregoing instrument pursuant to authority duly conferred upon him, and
acknowledge said instrument to be his free act and deed and the free act and deed of **NEW**
**ENTERPRISE REALTY, LLC.**

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

                                          , Notary Public
                              ROBERT L. RATTET
                              NOTARY PUBLIC, State of New York
Commission Expires:                     No. 4972649
                              Qualified in Westchester County
                              October 1, 2015

13

STATE OF NEW YORK          )
                          ) ss
COUNTY OF _Dewlyn_        )

      The foregoing instrument was executed before me, a Notary Public, in New York County, State of New York on this 3ᵉ day of Seṅ , 2015, by **Myint J. Kyaw**, personally known to me or who has produced _____ as Identification, and who, upon oath, acknowledged himself as is the President of **QUEEN ELIZABETH REALTY CORP.** and who executed the foregoing instrument pursuant to authority duly conferred upon him, and acknowledge said instrument to be his free act and deed and the free act and deed of **QUEEN ELIZABETH REALTY CORP.**

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

_____, Notary

Public

Commission Expires:

> ROBERT L. RATTET
> NOTARY PUBLIC, State of New York
> No. 4972649
> Qualified in Westchester County
> Commission Expires October 12, 2018

STATE OF NEW YORK          )
                          ) ss
COUNTY OF _____  )

      The foregoing instrument was executed before me, a Notary Public, in New York County, State of New York on this 3ᵉ day of Seṅ ., 2015, by **Myint J. Kyaw**, personally known to me or who has produced _____ as Identification, and who, upon oath, acknowledged himself as the President of **HONG KONG SUPERMARKET OF HESTER STREET CORP.** and who executed the foregoing instrument pursuant to authority duly conferred upon him, and acknowledge said instrument to be his free act and deed and the free act and deed of **HONG KONG SUPERMARKET OF HESTER STREET CORP.**

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

_____, Notary

Public

Commission Expires:

> ROBERT L. RATTET
> NOTARY PUBLIC, State of New York
> No. 4972649
> Qualified in Westchester County
> Commission Expires October 12, 2018

14

STATE OF NEW YORK          )
                          ) ss
COUNTY OF _Queens_         )

The foregoing instrument was executed before me, a Notary Public, in _Queens_ County, State of New York on this 5th day of _October_, 2015, by **LEWIS          WU,**          who          has          produced N Y S Drivers License # 416041330 as Identification. and who acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal.

_____

Notary Public
Commission Expires:

WAI YING LAM
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01LA6106789
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES MAR. 15, 20__

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

QUEEN ELIZABETH REALTY CORP.,                    Chapter 11
                                                 Case No. 13-12335 (SMB)
                              Debtor.

-------------------------------------------------------------X

## STIPULATION AND AGREED ORDER REGARDING
## AMENDMENT TO FORBEARANCE AGREEMENT WITH SCB

This Stipulation and Order (the "Stipulation and Order") is entered into between

Shanghai Commercial Bank Ltd., New York Branch ("SCB") and Queen Elizabeth Realty Corp.

(the "Debtor") (each a "Party," and collectively, the "Parties") regarding the First Amendment to

Forbearance Agreement (the "Amendment") annexed hereto as Exhibit A.

## RECITALS

**WHEREAS**, on July 17, 2013 (the "Petition Date"), the above-captioned debtor

(the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code; and

**WHEREAS**, SCB is a mortgagee of the Debtor with respect to the real property

located at 66/82 Elizabeth Street (a/k/a 80 Elizabeth Street), Commercial Unit, New York, New

York 10013, Block: 239, Lot: 1001 (the "Property");

**WHEREAS**, on September 23, 2013, the Court approved and entered that certain

Stipulation and Order Authorizing Debtor's Interim Use of Cash Collateral [Docket No. 30] (the

"Cash Collateral Order"), pursuant to which SCB has a first priority lien in and to the Collateral

(as that term is defined in the Cash Collateral Order), which has priority over any and all other

liens, claims and encumbrances (except for real estate taxes against the Property);

WHEREAS, SCB holds a secured claim against the Debtor in an amount not less than $14,449,816.40 as of June 23, 2015 (the "SCB Secured Claim") under those loan documents entered into by the Debtor and SCB as described in the Cash Collateral Order (the "SCB Loan Documents");

WHEREAS, one of the loans in connection with the SCB Loan Documents was to mature on July 22, 2015, by the terms of the note evidencing such loan (the "Note");

WHEREAS, on July 22, 2015, the Debtor and SCB entered into that certain Forbearance Agreement, pursuant to which SCB agreed to forbear from enforcing its rights under the SCB Loan Documents through September 30, 2015;

WHEREAS, on or about July 7, 2015, the Debtor filed its Second Amended Chapter 11 Plan of Reorganization (the "Plan"), which provided, *inter alia*, that, in addition to other amounts to be paid to SCB under the Plan on the Effective Date (as that term is defined in the Plan), SCB would be paid an assignment fee of $100,000 in exchange for its agreement, *inter alia*, to assign certain loan documents to a third-party on the Effective Date;

WHEREAS, the Debtor has requested that SCB agree to amend the Forbearance Agreement so that the Forbearance Period (as defined in the Forbearance Agreement) is extended to the earlier of December 31, 2015, or the date of the occurrence of any one or more Termination Event(as defined in the Amendment);

WHEREAS, the Debtor has represented to SCB that it intends to file a proposed Third Amended Chapter 11 Plan of Reorganization (the "Amended Plan"), which will provide *inter alia*, that, in addition to other amounts to be paid to SCB under the Amended Plan on the Effective Date (as that term is to be defined in the Amended Plan), SCB will be paid an

assignment fee of $200,000 in exchange for its agreement, *inter alia*, to assign certain loan documents to a third-party on the Effective Date; and

WHEREAS, SCB has agreed to extend the Forbearance Period in accordance with the terms of the Amendment.

NOW, THEREFORE, IT IS STIPULATED AND AGREED by and between the Parties that:

1.     The Debtor consents to lift the automatic stay solely for the limited purpose of entering into the Amendment.

2.     Except as provided herein and in the Amendment, all Parties' rights are reserved regarding their obligations arising out of the SCB Loan Documents.

**STIPULATED AND AGREED:**

HERRICK, FEINSTEIN LLP                     PRYOR CASHMAN LLP
*Counsel for the Debtor*                   *Counsel for SCB*


____*/s/ Hanh V. Huynh*____              ____*/s/ Seth H. Lieberman*____
By: Hanh V. Huynh                          By: Seth H. Lieberman

**IT IS SO ORDERED**

_____
UNITED STATES BANKRUPTCY JUDGE