```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                    :
                                                          :    Chapter 11
QUEEN ELIZABETH REALTY CORP.                              :
                                                          :    Case No. 13-12335 (SMB)
                                Debtor.                   :
----------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## GRANTING MOTION TO FILE LATE CLAIM

**A P P E A R A N C E S:**

ANDRIOLA LAW, PLLC
Attorneys for SMS Financial G, LLC
1385 Broadway, 22nd Floor
New York, New York 10018

    James M. Andriola, Esq.
        Of C0unsel

HERRICK, FEINSTEIN LLP
Attorneys for Debtor
2 Park Avenue
New York, New York 10016

    Robert L. Rattet, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      SMS Financial G, LLC ("SMS") seeks permission to file a late claim, contending that its predecessor in interest never received actual notice of the bar date (the "Motion"). The debtor opposes the Motion. It maintains that SMS' predecessor was an unknown creditor that was not entitled to actual notice but even if it was known, it independently acquired knowledge that the bar date had passed, failed to seek permission to file a late claim until four months later, and granting the Motion now will

severely prejudice the debtor and its estate. For the reasons that follow, the Motion is granted.

## BACKGROUND

The debtor is a New York limited liability company that owns a commercial condominium unit in Manhattan. At all relevant times, the debtor leased space to affiliated and unaffiliated entities, and the rents were the debtor's sole source of income. The debtor was owned in equal thirds by three brothers – Phillip Wu ("Phillip"), Jeffrey Wu ("Jeffrey") and Lewis Wu ("Lewis").

Prior to the petition date, an entity known as Foodmart International II, Corp. ("Foodmart") borrowed $1,784,820 from the Sierra Credit Corporation ("Sierra"). (*See Declaration of Jonathan Hoffer in Support of Motion of SMS Financial G, LLC for Authority to File Late Claim Pursuant to Rule 9006(b)(1)*, dated Apr. 1, 2016 ("*Hoffer Declaration*"), Ex. 1 (ECF Doc. # 349-3).) Lewis was the president of Foodmart, (*id.*, Ex. 1, at p. 7), and signed a guarantee of Foodmart's debt on behalf of the debtor. (*Id.*, Ex. 2, at p. 4.) Lewis also signed a separate personal guarantee. (*Id.*, Ex. 6, at p. 2.)

Sierra subsequently assigned its rights to All Points Capital ("All Points"), and in October 2011, All Points brought a state court action against Foodmart and the other guarantors, including the debtor. (*Id.*, Ex. 4.) The defendants, represented by Anthony A. Capetola, Esq., filed an answer on their behalf. (*Id.*, Ex. 5.) In June 2012, the state court granted summary judgment on the issue of liability in favor of All Points against the defendants, and scheduled an inquest. (*Id.*, Ex. 6.) On or about January 31, 2013, All Points and all but two of the defendants entered into a stipulation in which the

stipulating defendants consented to the entry of judgment in the sum of $1.5 million. (*Objection to Motion of SMS Financial G, LLC for Authority to File Late Claim Pursuant to Rule 9006(b)(1)*, dated Apr. 28, 2016 ("*Objection*"), Ex. A (ECF Doc. # 350).)

Lewis signed the stipulation individually and on behalf of two other corporate defendants but did not sign on behalf of the debtor and the signature line was left blank.[1] According to the debtor's bankruptcy attorney, Lewis lacked the authority to sign the guaranty on behalf of the debtor, (*Objection* at ¶ 6), and did not sign the stipulation "informing his counsel (Capetola) and counsel for All Points that he was not authorized to execute the Stipulation on behalf of the Debtor." (*Amended Supplemental Objection to Motion of SMS Financial G, LLC for Authority to File Late Claim Pursuant to Rule 9006(b)(1)*, dated June 3, 2016, at ¶ 6 (ECF Doc. # 355).) The debtor has not explained why Lewis did not assert his lack of authority as a defense to the debtor's liability in the answer filed in state court or, apparently, in opposition to the summary judgment motion. (*See Hoffer Declaration*, Ex. 6, at p. 2) (summarizing the defendants' opposition.)

The same day, the state court clerk entered a judgment against the stipulating defendants but not against the debtor. (*Id.*, Ex. 7.) The penultimate decretal paragraph in the judgment provided that All Points "sever and continue the action against the Defendant, Queen Elizabeth Realty Corp." It appears that the state court docket marked

---

[1]   The other non-signatory, Foodmart, was by then a chapter 7 debtor in this Court. (*See In re Foodmart International II Corp.*, 12-23248 (RDD).)

3

the inquest "settled before trial," and does not reflect any further activity. (*Objection*, Ex. B.)

The debtor filed this chapter 11 case five months later on July 17, 2013,[2] but did not schedule All Points as a creditor.[3] The debtor's counsel presented a proposed order which the Court signed that established October 28, 2013 as the deadline for filing prepetition claims ("Bar Date"), (*see Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, dated Sept. 13, 2013 ("*Bar Date Order*") (ECF Doc. # 24), and directed the debtor to serve the notice of the Bar Date (the "Bar Date Notice") by first-class mail, *inter alia*, on "all creditors and other known holders of claims," and "all parties to litigation with the Debtor." (*Id.* at p. 4.) The debtor did not mail a copy of the Bar Date Notice to All Points. Furthermore, the *Bar Date Order* did not require publication notice, and the docket does not reflect evidence, such as an affidavit of service, that the debtor ever published notice of the Bar Date.

On or about December 8, 2015, All Points' successor, Capital One Equipment Finance Corp., assigned its rights to SMS. (*Hoffer Declaration*, Ex. 8.) Schedule A to the assignment listed the debtor's chapter 11 case filed on July 17, 2013 in this Court. SMS claims it first learned about the debtor's bankruptcy at around this time. (*Id.* at ¶ 20.) The evidence presented on the Motion indicates that Capital One learned about the

---

[2]    The bankruptcy was prompted by matrimonial litigation between Phillip and his spouse. Although Phillip was only a one-third shareholder in the debtor, the state court had appointed a receiver over the debtor's property.

[3]    I assume that All Points held the claim against the debtor at the time of the bankruptcy filing. However, references to All Points include any predecessor in title to SMS.

4

debtor's bankruptcy on December 2, 2015, when it ran a search of bankruptcy filings relating to the assignment to SMS.  (*Response to the Post-Discovery Memorandum of SMS Financial G, LLC for Authority to File Late Claim Pursuant to Rule 9006(b)(1)*, dated Oct. 31, 2016, Ex. A, at ECF p. 141 of 144 (ECF Doc. # 366-1).)  After SMS filed the Motion, the debtor was afforded the chance to take discovery from SMS and its predecessors in interest, and has not uncovered any evidence that they knew about the bankruptcy before early December 2015.

Immediately following the assignment, SMS discovered that the bankruptcy case was in its final stages and SMS needed to act.  On or about December 12 or 13, 2015, Daniel Shorr, a managing partner and director of SMS, "pulled" the electronic bankruptcy docket and learned that the debtor was "moving through their [*sic*] Fourth Amended Plan" but had not yet obtained the necessary financing.[4]  (*Id.*, Ex. A, at 15:16-17:1.)  On December 14, 2015, he instructed SMS' then-attorney, Lee Mendelson, Esq. of Moritt, Hock & Hamroff LLP, to file a notice of appearance and a motion to file a late claim.  (*Id.*, Ex. A, at 15:8-16:11; 17:10-14.)  Shorr also ran off documents from PACER, including a version of the plan, emailed the documents to Mendelson, (*id.*, Ex. A, 18:10-19:6), and told him "we need to get our claim filed before the plan is confirmed, and it looks like it's too late." (*Id.*, Ex. A, at 20:13-15.)  Mendelson assured Shorr that he had made the motion to file a late claim and had spoken to opposing counsel, (*id.*, Ex. A, at 17:17-23), but this was a lie.  Mendelson never filed a notice of appearance or a motion to file a late claim, and there is no evidence that he advised the debtor's counsel of SMS'

---

[4] The Fourth Amended Plan was not filed until January 4, 2016.  Given the timing of the conversations with SMS' counsel, he had probably reviewed an earlier plan.

5

claim. In March 2016, SMS discharged Mendelson and his firm and hired its present counsel.

In the meantime, the debtor prosecuted several versions of its plan. The Court held a confirmation hearing on December 17, 2015, and denied confirmation without prejudice. (*See Order Denying Confirmation of Debtor's Modified Third Amended Chapter 11 Plan of Reorganization*, dated Dec. 30, 2015 (ECF Doc. # 303).) The debtor immediately filed another plan and disclosure statement, the Court conditionally approved the new disclosure statement, (*see Order Conditionally Approving Disclosure Statement and Scheduling Hearing to Consider (A) Final Approval of Disclosure Statement; and (B) Confirmation of Fourth Amended Chapter 11 Plan of Reorganization*, dated Jan. 4, 2016 (ECF Doc. # 309)), and scheduled the confirmation hearing for January 14, 2016. (*Id.* at 1.) The debtor filed a notice of hearing on the electronic docket which identified three matters scheduled to be heard on January 14, but omitted the hearing on confirmation. (*Notice of Hearing*, dated Jan. 6, 2016 (ECF Doc. # 310).)

The confirmation hearing went forward, as scheduled, on January 14, 2016, and the Court signed the order confirming the debtor's *Modified Fourth Amended Chapter 11 Plan of Reorganization* ("*Plan*") (ECF Doc. # 313) on January 26, 2016. (*See Findings of Fact, Conclusions of Law and Order Confirming the Debtor's Chapter 11 Plan of Reorganization*, dated Jan. 26, 2016 ("*Confirmation Order*") (ECF Doc. # 322).) In total, the debtor estimated that it would pay approximately $15.2 million under the *Plan*, (*see Disclosure Statement with Respect to Fourth Amended Chapter 11 Plan of Reorganization of Queen Elizabeth Realty Corp.*, dated Jan. 4, 2016 ("*Disclosure*

6

*Statement*"), at 3-4 (ECF Doc. # 305), although most of this amount was payable to an exit financer over time. According to the debtor, it had only two unsecured creditors, and had fully satisfied their claims pursuant to an earlier Court-ordered compromise. (*See id.* at 14 n.2.) The *Plan* nonetheless included an unsecured class, the debtor estimated the amount of claims in that class at zero, (*id.* at 4, 14), and the *Plan* provided that the unsecured claims would receive 100% plus post-petition interest at the Federal judgment rate. (*Plan* § 4.3.) In addition, the *Plan* cancelled the old equity, issued new equity in the same proportions to Jeffrey, Lewis and Phillip's receiver, and deemed old equity unimpaired. (*Id.* at § 4.4.) In short, the *Plan* paid all creditors in full and the existing shareholders retained their interests (although Phillips' share was distributed to his receiver).

SMS filed the Motion on April 5, 2016, arguing that it should be granted the opportunity to file a late claim because the debtor did not serve the Bar Date Notice on All Points. In response, the debtor did not offer any testimonial evidence, and instead, relied on objections signed by counsel and documentary evidence. The debtor made five arguments: (1) Lewis lacked the authority to sign the guaranty on behalf of the debtor, (2) the guaranty did not benefit the debtor, (3) had the debtor searched the state court docket, that search would have indicated that the litigation was "settled," and consequently, All Points was an unknown creditor, (4) All Points is guilty of laches, and (5) Jeffrey, the ostensible manager of the debtor, did not know about the guarantee, the state court action or any claims asserted against the debtor in connection with the guarantee.

**DISCUSSION**

When a creditor is not scheduled as required by Bankruptcy Code § 521, "[t]he burden of establishing that a creditor has received adequate notice rests with the debtor." *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999). The nature of the notice depends on whether the creditor is known or unknown. A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988). An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317 (1950). Known creditors are entitled to actual notice and unknown creditors are generally entitled to notice by publication. *See DePippo v. Kmart Corp.*, 335 B.R. 290, 295-96 (S.D.N.Y. 2005) ("While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'"); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2013) ("For unknown creditors, constructive notice, such as notice by publication, will suffice."). The former requirement was imposed by the *Bar Date Order* which required the debtor to mail the Bar Date Notice to known holders of claims and litigation counter-parties, but as stated, did not require publication notice.

The parties dispute whether All Points was a known or unknown creditor, but the dispute is immaterial. All Points did not receive actual notice of the Bar Date, and did not receive constructive notice because the debtor never published it. Thus, whether All

Points was a known or unknown creditor, the debtor did not provide notice consistent with due process.[5]

Having concluded that All Points did not receive the notice to which it was constitutionally entitled, I must decide if, as SMS argues, that ends the inquiry. In chapter 11 cases, notice of or awareness that a bankruptcy case is pending does not give the creditor the information needed to ascertain the bar date, *GAC Enter., Inc. v. Medaglia* (*In re Medaglia*), 52 F.3d 451, 457 (2d Cir. 1995); *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 612 (S.D.N.Y. 2014), and a creditor who was not served with notice of the bar date but nonetheless learns that a case is pending is not under a duty to discover the bar date. *City of New York v. New York, N.H. & H.R. Co.* (*In re New York, N.H. & H.R. Co.*), 197 F.2d 428, 431-32 (2d Cir. 1952) (Frank, J., dissenting), *rev'd*, 345 U.S. 901 (1953).

SMS contends that a debtor's failure to give constitutionally-required actual notice to a known creditor allows that creditor to file a late claim, apparently even if creditor knew but ignored the actual bar date.[6] (*See Memorandum in Further Support of Motion of SMS Financial G, LLC for Authority to File Late Claim*, dated Nov. 9, 2016, at ¶¶ 2-6 (ECF Doc. # 369).) The principal authority SMS cites on this point is *City of*

---

[5]   All Points was also entitled to actual notice under the *Bar Date Order* as a party to litigation with the debtor. The debtor argues that a search of the state court docket would have indicated that the litigation had been "settled before trial," and hence, that there was no pending action (or All Points claim). (*Objection* at ¶¶ 10-11 & Ex. B.) Exhibit B, the snapshot of the state docket sheet, shows that the debtor performed the search on April 6, 2016, one day after SMS made the Motion. Thus, the debtor did not conduct a timely search it now claims would have been fruitless. Moreover, the state court docket is wrong because the judgment did not cover the debtor and the action against the debtor was not terminated.

[6]   I assume that SMS would make the same argument if SMS was an unknown creditor that did not receive constructive notice.

9

*New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293 (1953). There, the respondent (the "Railroad"), was a debtor under section 77 of the Bankruptcy Act, the predecessor of the Chandler Act of 1938. The District Court fixed a bar date, and directed the Railroad to mail the bar date order to all creditors that had already appeared in court, and also publish notice of the bar date. The City of New York (the "City"), a lien creditor that was not entitled to actual notice under the District Court's order, did not receive a copy of the bar date order and never filed a claim. *Id.* at 294. The Supreme Court concluded that publication notice of the bar date was not "reasonable notice," as required by Bankruptcy Act § 77(c)(8), to the City. *Id.* at 296. While publication notice may suffice for unknown creditors, constructive notice was insufficient because the City was a known creditor. *Id.*

*City of New York* was not a constitutional decision; the Supreme Court was construing a statutory notice requirement. *Medaglia*, 52 F.3d at 456 ("It is apparent that the Court was construing what was then § 77 of the Act, dealing with railroad reorganizations, and not the Constitution.") Due process only requires notice reasonably calculated under the circumstances "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane*, 339 U.S. at 314). The question is whether a creditor who never received actual or constructive notice of the bar date but nevertheless knows it is under a duty to act.

The answer must be yes. A bankruptcy case is a collective proceeding that affects the rights of many. Although the debtor did not give All Points actual or constructive notice, *Espinosa* as well as the governing law regarding excusable neglect and laches,

10

discussed below, imply that a creditor who independently acquires knowledge of a pending action that will affect its rights cannot sit idly by, let time pass and assert its rights at a later date when it may be impossible or impractical to unwind earlier actions that affect the rights of others. Thus, although a known creditor with knowledge of the chapter 11 case who did not receive actual notice is not deemed to know the bar date or be under a duty to discover it, a creditor who has actual knowledge of the bar date ignores it at its peril.

This case presents a variation of this issue. The debtor does not contend that All Points ignored the Bar Date – its successor learned about the Bar Date two years after it had expired. Instead, the debtor argues that SMS knew in December 2015 that the Bar Date had passed and the case was on the verge of confirmation. The debtor maintains that SMS should have asserted its claim at that point but failed to do so as a result of its attorney's malfeasance and permitting SMS to file the claim at this late date will severely prejudice the debtor and the case.

A threshold question on which the parties disagree is what law governs the Motion. SMS argues that the Motion must be judged under the principle of excusable neglect set forth in *Pioneer Inv. Servs. Co. v. Brunswick Associated Ltd. P'ship*, 507 U.S. 380 (1993), discussed below. The debtor relies primarily on *In re Drexel Burnham Lambert Grp., Inc.*, 151 B.R. 674 (Bankr. S.D.N.Y.), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993), a pre-*Pioneer* decision. There, the Bankruptcy Court denied a motion to file a late claim made by a known creditor that did not receive actual notice of the bar date based, *inter alia*, on laches which considers (1) proof of delay in asserting a claim despite the opportunity to do so, (2) lack of knowledge on the defendant's part that a claim would

11

be asserted, and (3) prejudice to the defendant by the allowance of the claim. *Id.* at 683 (citing *Rapf v. Suffolk County of New York,* 755 F.2d 282, 292 (2d Cir. 1985)).

The appropriate test depends on the relief that the creditor is seeking. Rule 9006(b)(1) governs the permissibility of filing a late claim in a chapter 11 case. *Pioneer*, 507 U.S. at 389; *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005). If the creditor seeks additional time to file a late claim after the time to act set by the Bankruptcy Rules or a court order has expired, the Court may "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). This is the *Pioneer* test discussed below. If the creditor does not seek additional time to file a late claim and participate in the distribution, but instead, asks for a declaration that it is not bound by the confirmation discharge because it lacked actual knowledge of the case in time to protect its rights, *Pioneer* does not apply and the court must decide the motion under the doctrine of laches. *E.g., Maya Constr. Co. v. Maya Constr.*, 78 F.3d 1395, 1400 (9th Cir. 1996) (remanding proceeding on whether known creditor was bound by confirmation discharge where creditor received actual notice of the case after the bar date but before the entry of the confirmation order to "decide . . . whether, when [the creditor] eventually was served, he had notice that the proceedings were far advanced and, by waiting too long to take action, ignore the proceedings to which the notice refers at his peril.") (internal citation, quotation marks and internal alterations omitted).

SMS moved to file a late claim, and consequently, *Pioneer* governs the disposition of the Motion. Under *Pioneer*, the determination whether to allow a late claim is an equitable one that takes account of all of the surrounding circumstances:

> These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395. The burden of proof rests with the party asserting excusable neglect. *Enron*, 419 F.3d at 121.

The several factors are not accorded equal weight. In the "typical" case, "the length of the delay, the danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the extension.'" *Enron*, 419 F.3d at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004)).[7] Consequently, the focus is on the third factor – the reason for the delay – as the predominant factor. *Watts-Devine v. United States*, 616 F. App'x. 9, 11 (2d Cir. 2015); *accord Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004); *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay… [is] perhaps the most important single factor in determining whether neglect is excusable.") (quoting *Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (8th Cir. 1994)); *Silivanch*, 333 F.3d at 366 ("[W]e and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'") (quoting *Pioneer*, 507 U.S. at 395); *Graphic Commc'ns Int'l Union Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (reason for delay

---

[7] The evidence does not suggest that any party acted in bad faith.

13

always a critical factor); *see also In re Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (noting rule in several sister circuits that "fault in the delay is the preeminent factor"). The other factors are relevant only in close cases. *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d at 415-16.

In this case, the reason for the delay weighs heavily in SMS' favor. All Points did not receive actual or constructive notice of the Bar Date, and its successors did not find out about the bankruptcy until December 2015, two years after the Bar Date. Although SMS learned that the Bar Date had passed, immediately instructed Mendelson to file a motion to permit its late claim, and Mendelson negligently failed to do so, the resulting delay was not unreasonable under the circumstances. The pending confirmation hearing rather than the long-passed Bar Date created the urgency. SMS never received notice of the actual hearing date, and the *Notice of Hearing* filed by the debtor erroneously omitted it from the matters scheduled to be heard on January 14. Thus, while SMS was following the case on PACER, the debtor had posted misleading information on PACER, and SMS did not have actual or constructive notice of a deadline by which it had to act.

Furthermore, the four month delay was short, and the time frame within which SMS had to act was even shorter. To avoid the prejudice that the debtor claims, SMS would have had to file the Motion prior to January 26, 2016. Once the *Plan* was confirmed without accounting for the SMS claim, the damage the debtor points to was done, and any further delay would not have added to it.

This brings me to the question of prejudice. *Pioneer* "gives us little guidance as

14

to what prejudice actually is." *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 126 (3d Cir. 1999). Nevertheless, "the Court must have had more in mind than 'a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims." *Enron*, 419 F.3d at 130 (quoting *In re R.H. Macy & Co., Inc.,* 166 B.R. 799, 802 (S.D.N.Y. 1994)). "[O]therwise, virtually all late filings would be condemned by this factor [, because] they seek to share, with timely filed claims, in the bankrupt's limited resources." *Id.*; *O'Brien Envtl. Energy, Inc.,* 188 F.3d at 126 ("We believe that *Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue."). The size of the claim is nevertheless relevant, and other factors include whether the granting of the motion would jeopardize the reorganization by forcing the return of amounts already paid or the future distributions to creditors, whether the debtor had advance knowledge of the claim and whether permitting the claim will open the floodgates to similar claims. *Enron*, 419 F.3d at 130-31. The Court must remain mindful that that "'prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence.'" *Enron*, 419 F.3d at 131 (quoting *O'Brien Envtl. Energy Inc.,* 188 F.3d at 127).

The evidence of prejudice is entirely hypothetical. Permitting SMS to file its claim will not open any floodgates because there are no other lurking, similarly-situated creditors that have been brought to the Court's attention. In addition, although the debtor contends that payment to SMS "would consume a significant portion of the remaining reserves created in consummating the Plan and dilute other claims which had been properly asserted," (*Response to the Memorandum in Further Support of SMS*

15

*Financial G, LLC for Authority to File Late Claim*, dated Nov. 16, 2016, at ¶ 14 (ECF Doc. # 370), it has not explained how any other claims will be diluted or go unpaid especially since all of the unsecured creditors have been paid.

Finally, the liquidation analysis attached as Exhibit B to the debtor's *Disclosure Statement* estimated the value of the debtor's equity in the amount of $2,284,710. The debtor's members retained that equity for their own benefit, and any prejudice should be borne by equity rather than SMS. The alternative of denying SMS a chance to participate in the case and discharging its claim while allowing equity to retain the benefits of ownership is inequitable, and the Court concludes that the *Pioneer* factors, particularly the reason for the delay, weigh in favor of granting the Motion without prejudice to the debtor's right to file an objection to the SMS claim, if appropriate, within thirty days of this order. The Court has considered the debtor's remaining arguments and concludes that they lack merit.

Settle order on notice.

Dated:  New York, New York
        March 24, 2017

                                            /s/ *Stuart M. Bernstein*
                                            STUART M. BERNSTEIN
                                            United States Bankruptcy Judge